S89A0297. HARRIS v. ENTERTAINMENT SYSTEMS, INC.
S89A0298. WEBB v. ENTERTAINMENT SYSTEMS, INC.

(386 SE2d 140)

GREGORY, Justice.

This appeal arises from an injunction entered in the Superior Court of Fulton County restraining the enforcement of OCGA §§ 3-3-40 to 3-3-46. These code sections were enacted "so as to prohibit certain nude and sexual conduct on premises where alcoholic beverages are sold or dispensed for consumption on the premises. . . ." Ga. Laws 1988, p. 212. Appellee Entertainment Systems, Inc. (The Gold Club) operates a night club that hires female independent contractors to dance routines during which they remove some or all of their clothing. The Gold Club brought suit challenging the constitutionality of the 1988 Act under the Georgia Constitution of 1983. Enjoining the enforcement of the Act the superior court determined that the Act infringed upon protected speech and that this infringement was not the result of a proper exercise of police power. We affirm.

1. Two issues we address in this appeal are whether the Act infringes upon protected speech and, if so, whether the State is empowered under the U. S. or Georgia Constitutions to regulate that speech in this fashion.

a) It is well established that the realm of expression is greater than that which is constitutionally protected. For example, under *Roth v. United States,* 354 U. S. 476 (77 SC 1304, 1 LE2d 1498) (1957) and its progeny, the state may regulate expression which is obscene. The courts have also established that even if certain expression

---

from the death penalty based upon an IQ test score of 70 or below.

is protected, the state, under its police power, can infringe upon it. E. g., *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252, 255-56 (297 SE2d 250) (1982). Thus, the first issue is whether the Act reaches expression that the First Amendment or 1983 Georgia Constitution Art. I, Sec. I; Par. V protect. As this Court has never directly addressed the issues this appeal raises with regards to Georgia's protection of speech, we will apply First Amendment standards. 250 Ga. at 255, n. 5.

The Act prohibits, inter alia, the displaying or simulation on licensed premises of certain sexual acts, the touching or caressing of particular body parts, and partial or total nudity. OCGA § 3-3-41. The Act on its face, goes beyond merely prohibiting obscenity. For example, the statute prohibits mere nudity, which is not per se obscene. *Jenkins v. Georgia*, 418 U. S. 153, 161 (94 SC 2750, 41 LE2d 642) (1974); *Flynt v. State*, 153 Ga. App. 232, 233 (264 SE2d 669) (1980). Appellants argue that the proscribed conduct is not protected speech because it "is merely the cheap exploitation of human sexuality for commercial purposes."[1] This argument fails. For example in *California v. LaRue*, 409 U. S. 109 (93 SC 390, 34 LE2d 342) (1972), in which the Supreme Court upheld the facial constitutionality under the U. S. Constitution of regulations substantially the same as the statutes under attack here, the Court noted that at least some of the proscribed conduct was protected under the First Amendment. 409 U. S. at 118. See also *Sable Communications of Ca. v. FCC*, 57 U.S.L.W. 4290 (U. S., June 23, 1989); *Young v. American Mini Theaters*, 427 U. S. 50 (96 SC 2440, 49 LE2d 310) (1976). Therefore, because at least some of the proscribed conduct would fall within the purview of First Amendment protection, it is also protected by 1983 Georgia Constitution Art. I, Sec. I, Par. V.

b) Appellants argue that, under the Twenty-First Amendment, a state has the power to regulate sexual expression when combined with the sale of alcohol even though the expression would otherwise be protected. That is, under *LaRue* and *New York State Liquor Auth. v. Bellanca*, 452 U. S. 714 (101 SC 2599, 69 LE2d 357) (1981), this form of expression loses its First Amendment protection when combined with the sale of alcohol due to the state's broad powers under the Twenty-First Amendment. This argument relies on a faulty analysis of these two cases because, although a state may have a certain amount of its police power restored to it under the Twenty-First Amendment that would otherwise be limited under the First Amendment, the expression is still within the purview of the First Amend-

---

[1] The mere fact that commercial consideration motivates speech does not lessen the protection afforded it. *Sullivan v. New York Times*, 376 U. S. 254, 266 (84 SC 710, 11 LE2d 686) (1964).

ment. Therefore, it is still protected by Georgia's free expression guarantees. Because Georgia has no constitutional equivalent to the Twenty-First Amendment, the State's police power, though possibly not limited under the U. S. Constitution, is limited by Georgia's constitution. Cf. *City of Newport v. Iacobucci*, 479 U. S. 92, 96 (107 SC 383, 93 LE2d 334) (1986).

c) After determining that the Act infringes upon protected expression, the analysis must turn to whether the Act is a valid exercise of the State's police power. Generally, the first step of this analysis is to determine whether the Act is content-neutral because it does not fit nicely into either a "content-neutral" or a "content-based" category. Appellants argue that the Act is neutral because it is directed towards the crime, etc., associated with these establishments, and The Gold Club argues that it is clearly content based because it is directed towards establishments offering sexually-oriented communication where alcohol is served. Regardless of whether the Act is content-neutral or content-based, the Act is an unconstitutional exercise of police powers even under the less stringent content-neutral test.

This Court has previously held that a content-neutral Act will be upheld even though it infringes upon protected expression if "it furthers an important government interest; if the government interest is unrelated to the suppression of speech; and if the incidental restriction of speech is no greater than is essential to the furtherance of that interest." *Paramount*, 250 Ga. at 256. Thus, the first issue concerns the State's interest furthered by the Act.

In its order, the superior court stated that because the legislative intent was not stated, the governmental interest was unknown. While the lack of a definitive statement by the legislature of the governmental interest makes it more difficult to ascertain the governmental interest sought to be furthered by the Act, the courts must determine that interest. In this case, we assume for the purposes of our analysis that the important governmental interest sought to be furthered by the Act is the prevention of the otherwise illegal activity found to be associated with establishments offering nude dancing and alcohol. We also assume that the Act furthers that interest. *LaRue*, 409 U. S. at 111; *Bellanca*, 452 U. S. at 717-18. This would satisfy the first and second prongs of the *Paramount* test.

The third prong of the *Paramount* test is that the incidental restriction of free speech is no greater than is essential. That is, the means must be narrowly drawn to further the intent of the Act without unnecessarily infringing on other protected speech. The Act fails in this regard. We assume the governmental interest was to prevent nude, barroom dancing because of the illegal activity that often results at such establishments. The Act, however, by its explicit terms, goes beyond prohibiting nude dancing in bars. This Act applies to a

host of other establishments besides bars. For example, the Act would apply to so-called mainstream performance houses and museums, which need licenses to sell alcoholic beverages to their patrons for consumption on the premises. Appellants do not argue that the legislature found the combination of alcohol and the depictions of nudity an undesirable mix at these establishments or that it had even intended to proscribe the mix at museums, at the opera, or at mainstream performance and movie theaters.[2] With regard to bars, the Act, under any reasonable construction, would prevent a bar from turning a television set on when a soap opera or movie depicts simulated sexual intercourse, also proscribed by the Act. The Act goes well beyond the argued governmental interest and substantially infringes upon other protected expression. Therefore, the incidental restriction of expression is greater than is essential to the furtherance of the governmental interest, and the Act must fall as an improper exercise of the State's police power.

2. As a general rule, courts of equity will not interfere with the administration of criminal justice, OCGA § 9-5-2, but there is an exception to this rule " 'when injury to property is threatened,. . . injunction will lie notwithstanding the fact that in the process a criminal prosecution is involved.' " *Majmundar v. Veline*, 256 Ga. 8 (342 SE2d 682) (1986). See also *Moultrie Milk Shed v. City of Cairo*, 206 Ga. 348 (1) (57 SE2d 199) (1950). Appellants argue that because "[t]he business of manufacturing, distributing, selling, handling, and otherwise dealing in or possessing alcoholic beverages are . . . privileges in this state and not rights," OCGA § 3-3-1, The Gold Club has no injurable property. A liquor license is an entitlement to operate a business, a business upon which a person's livelihood is dependent. Furthermore, often, as in this case, substantial amounts of property are invested in the business that is dependent on the continuation of the license for its term. The U. S. Supreme Court has stated:

> Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. [Cits.] This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or

---

[2] Even though the Gold Club does not purport to be a main-stream performance establishment, it has standing to raise the issue under the special standing theory in free speech analysis. See *United States v. Mazurie*, 419 U. S. 544, 550 (95 SC 710, 42 LE2d 706) (1975).

a "privilege." [*Bell v. Burson*, 402 U. S. 535, 539 (91 SC 1586, 29 LE2d 90) (1971).]

We hold that The Gold Club had a sufficient property interest in its alcoholic beverage licenses to authorize the superior court to exercise its equity jurisdiction. We note, however, that we make no determination as to the nature of the property interest, only that it is sufficient to meet the exception set out in *Moultrie*, 206 Ga. at 348 (1).

*Judgments in S89A0297 and S89A0298 affirmed. All the Justices concur, except Marshall, C. J., and Weltner, J., who dissent. Bell, J., disqualified.*

WELTNER, Justice, dissenting.

1. OCGA §§ 3-3-40 through 3-3-46 were enacted by the General Assembly "relating to regulation of alcoholic beverages in general, so as to prohibit certain nude and sexual conduct on premises where alcoholic beverages are sold or dispensed for consumption on the premises. . . ." Ga. Laws 1988, p. 212. Entertainment Systems, Inc. operates an establishment known as The Gold Club, where nude dancing is performed while alcoholic beverages are sold for consumption on the premises. Dancers at the Gold Club are styled by the club as "independent contractors." The club pays them no wages or benefits of any kind. Their sole compensation comes from tips given to them by those customers of the club who approve of their performance.

2. The majority has concluded that the Act was an infringement upon the right of free speech as protected by the Constitution of the State of Georgia. It should be noted, however, that the United States Supreme Court has upheld a statute identical in all material parts to the 1988 Act.[1]

3. The first Constitution of Georgia, in the year 1777, guaranteed freedom of the press. The 1877 Constitution guaranteed freedom of speech. I cannot believe that our forebears, in writing these protections, intended to vest in each Georgian a constitutional right to dance naked for tips in a barroom. Nor do I think that the citizens of Georgia who ratified the Constitution of 1983 intended to preserve or to create any such "right."

4. Because the 1988 Act is not invalid for any of the reasons urged by The Gold Club, the injunction prohibiting its enforcement by the state should be vacated.

---

[1] *California v. LaRue*, 409 U. S. 109 (93 SC 390, 34 LE2d 342) (1972). The California statute, as the Georgia statute, applied only to establishments licensed, or required to be licensed, for the sale of alcoholic beverages by the drink, and for consumption on the premises. See also *New York State Liquor Auth. v. Bellanca*, 452 U. S. 714 (101 SC 2599, 69 LE2d 357) (1981), upholding a similar ban on "topless" dancing in establishments that sell liquor for consumption on the premises.

I am authorized to state that Chief Justice Marshall joins in this dissent.

Decided December 5, 1989 —
Reconsideration denied December 20, 1989.

*Michael J. Bowers, Attorney General, David A. Runnion, Senior Assistant Attorney General, Grace E. Evans, Assistant Attorney General,* for appellant (case no. S89A0297).
*Helen A. Roan, Nina M. Radakovich,* for appellant (case no. S89A0298).
*Groover & Childs, Denmark Groover, Jr., Ellenberg & Bryan, Richard D. Ellenberg, John R. Myer,* for appellee.