S92A1260. PEL ASSO, INC. et al. v. JOSEPH et al.
(427 SE2d 264)

BENHAM, Justice.

This appeal is from an order denying appellants an injunction against enforcement of an ordinance enacted by the City of LaGrange for the expressed purpose of suppressing the secondary effects associated with business establishments offering nude dancing as entertainment. Appellants contend that the ordinance in question is unconstitutional on several grounds, chief among them that it infringes on rights of expression protected by the First Amendment to the Constitution of the United States and by Art. I, Sec. I, Par. V, of the Constitution of Georgia of 1983.

1. As this court did in *Harris v. Entertainment Systems*, 259 Ga.

701 (1) (386 SE2d 140) (1989), we first consider whether the ordinance in question reaches expression that is protected by the First Amendment or by Ga. Const. 1983, Art. I, Sec. I, Par. V. Here, as there, we will apply First Amendment standards, with the result that conduct protected by the First Amendment will be protected by the Georgia Constitution. *Harris*, supra, Div. 1 (a).[1]

The conduct in question is nude dancing. The Supreme Court of the United States has recognized that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though . . . only marginally so." *Barnes v. Glen Theatre*, ____ U. S. ____ (111 SC 2456, 115 LE2d 504) (1991). Since the ordinance prohibits what it defines as "total nude dancing" and places restrictions on what it defines as "partial nude dancing," it is clear that the ordinance infringes on protected expression.

2. Having established the effect of the ordinance, we turn to the question of whether the ordinance is a valid exercise of the city's police power. As this court did in *Harris*, we will use the analysis applied in *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252 (1) (c) (297 SE2d 250) (1982): a regulation

> will be upheld even though it infringes upon protected expression if "it furthers an important government interest; if the government interest is unrelated to the suppression of speech; and if the incidental restriction of speech is no greater than is essential to the furtherance of that interest." [Cit.]

*Harris*, supra, Div. 1 (c).[2]

In contrast to the statute considered in *Harris*, the ordinance at issue here contains a "Public Declaration" of its purpose: to "minimalize criminal behavior and undesirable community conditions which may normally be associated with . . ." nude dancing.[3] As this

---

[1] In *Harris*, this court noted that any expression protected by the First Amendment would be protected by Georgia's free expression guarantees, but that the Georgia Constitution did not provide for the infringements on expressive rights permitted under the U. S. Constitution pursuant to the Twenty-First Amendment thereto.

[2] In *Barnes*, supra, the U. S. Supreme Court employed almost the same analysis, adding an initial requirement that the regulation be within the power of the government to enact. That element is not contested in the present case.

[3] The criminal behavior to be avoided was specified earlier in the declaration to be "disorderly conduct, prostitution, drug trafficking, and substance abuse," and the undesirable community conditions were described as "depressed property values in the community and surrounding neighborhoods, increased expenditures for and allocation of enforcement personnel reasonably necessary and desirable for the appropriate preservation of law and order. . . ."

court did in *Harris*, we assume that the ordinance's declaration of purpose satisfies the first two prongs of the *Paramount* test.

Turning to the last prong of that test, we note first that because we are dealing here with a fundamental right, we must apply a heightened level of scrutiny.[4] Viewing the ordinance in that light, we must hold, as this court did in *Harris*, that the ordinance fails to meet the third prong of the *Paramount* test, that the incidental restriction of free speech be no greater than is essential. Once again, the problem is overbreadth. In *Harris*, it was apparent from the statute that it was nude barroom dancing which was targeted. This court found the statute overbroad because it applied to "a host of other establishments besides bars," including "so-called mainstream performance houses and museums" and bars with televisions on which a soap opera or movie might depict simulated sexual intercourse.

The ordinance in the present case is, by virtue of the breadth of the definitions in it, so broad in application as to include not only bars and mainstream performance houses, but a considerable spectrum of private conduct. For instance, § 30-21-1 (d) of the ordinance defines "Partial nude dancing" as

dancing or appearing partially nude but at a minimum with the human male or female genitals, pubic area and buttocks and all of the nipples of the breasts of a female being at least shielded and covered by a fully opaque covering[.]

Because there are no distinctions drawn in that definition or anywhere else in the ordinance between public and private behavior, that definition would include a female guest dancing at a private pool-side party while wearing a bikini swim suit which failed to cover her buttocks.[5] There being no distinction in the ordinance between adults and children, the definition above could be construed to include the appearance of a female child wearing only a diaper.

Likewise, the definition in the ordinance of "Total nude dancing," ("appearing or dancing in a total state of nakedness . . .")[6] is so broad, without distinction between public and private behavior or adults and children, as to include a person appearing nude at home

---

[4] Fundamental constitutional rights are those that are recognized as having a value so essential to individual liberty in our society that their infringement merits careful scrutiny by the courts. The list that the U. S. Supreme Court has identified as "fundamental" is not long. It includes the guarantees of the Bill of Rights. . . . *Ambles v. State*, 259 Ga. 406 (2) (b) (383 SE2d 555) (1989).

[5] Although the trial court found that the ordinance would permit the wearing by a dancer of "pasties" and a "G-string," that is not consistent with the plain language of the statute which requires covering the buttocks with a fully opaque covering.

[6] § 30-21-1 (f).

before one other person. To stretch a point, the definition would include a child appearing before its parents at bath time in a "total state of nakedness."

The application of the ordinance to "so-called mainstream performance houses" (*Harris*, supra), is unquestionable. The ordinance forbids nude appearances everywhere[7] and limits partially nude appearances to licensed establishments,[8] the definition of which excludes mainstream performance houses:

> the licensee must be a bona fide food service establishment and a restaurant and must have a Class B Retail Pouring License . . . [and] must be engaged predominantly in the business of food service. . . .[9]

We agree with appellees that governments may impose some restrictions on protected expression in the legitimate exercise of police powers, and it appears that appellees have made a brave start in that direction. Our holding here must not be mistaken for a broad statement of the inviolability of nude dancing as a form of expression. A carefully and narrowly drawn regulatory scheme which makes appropriate distinctions between public and private behavior and which impacts only those modes of expression which, in the experience of local governments, tend to be the focal points of negative effects such as increased crime, can pass constitutional muster notwithstanding some restriction of protected expression. However, the present ordinance, as drafted, is not such a narrowly drawn regulation and we are constrained to find it unconstitutional as an improper exercise of the police powers.

3. In addition to attacking the ordinance as an unconstitutional restriction on the right of free expression, appellant asserts that it is void for vagueness.

> A statute violates due process if it is so vague that persons of " 'common intelligence must necessarily guess at its meaning and differ as to its application.' [Cits.] Furthermore, 'all the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.' [Cit.]"

*Sliney v. State*, 260 Ga. 167 (391 SE2d 114) (1990). Applying that standard to the ordinance definitions of "Total nude dancing" and

---

[7] § 30-21-2.
[8] § 30-21-7.
[9] § 30-21-15 (a) & (b).

"Partial nude dancing," we find them to be too vague to permit enforcement.

Although it would seem that persons of common intelligence would have no difficulty in discerning what is meant by "total nude dancing," a look at the definition in the ordinance shows a fatal ambiguity.

> "Total nude dancing" shall be appearing or dancing in a total state of nakedness without the protection or benefit of the minimal coverings required for partial nude dancing;

§ 30-21-1 (f), Code of Ordinances of the City of LaGrange. By itself, "a total state of nakedness" is perfectly understandable, and we have no doubt that a person of common intelligence would understand that in the context of this ordinance, the wearing of such accessories as shoes and jewelry would not diminish the nudity of an otherwise naked person. Likewise, "without the protection or benefit of the minimal coverings required for partial nude dancing" would be understandable to a person of common intelligence. However, when those two phrases are included in the same definition, confusion arises. For example, a female dancer appearing topless but with a relatively modest skirt would not be in "a total state of nakedness," but would certainly be "without the protection or benefit of the minimal coverings required for partial nude dancing." Because that definition does not give sufficient warning so as to permit persons to avoid that which is forbidden, it is void for vagueness. Id.

The definition of "Partial nude dancing," set out above, is even more vague than that of "Total nude dancing." The definition purports to set the minimum coverage permissible, but does not clearly do so. As was noted in fn. 5, supra, the ordinance mandates that buttocks be covered, yet it does not dictate the extent to which coverage is necessary. The confusion may readily be seen in the fact that the trial court considered that requirement to be met by the wearing of a G-string, but reference to the dictionary definition of G-string[10] does not indicate more than minimal coverage of the buttocks. The definition of "Partial nude dancing" also fails to delineate with any precision the point at which casual attire becomes partial nudity. A person of common intelligence would not be able to say with confidence whether a female dancer wearing a halter top and brief shorts would be within or without the definition, or whether a male dancer wearing

[10] a breech cloth consisting usually of a strip of cloth passed between the legs and supported by a waist cord [or] a fancy theatrical and burlesque costume of similar design.
Webster's Third New International Dictionary, 1971.

only a pair of pants would be partially nude within the intent of the statute.

4. Two other portions of the ordinance, both pertaining to the granting and revoking of licenses and permits, fail to comply with the requirements of due process. In § 30-21-15 (e) of the ordinance, persons who wish to appear as partially nude dancers in licensed premises are required to obtain a permit by filling out an application. Nowhere in that section or any other part of the ordinance are standards established governing the granting or denying of such permits. That denial of permits is contemplated by the ordinance is clear from § 30-21-15 (g), which provides for the revocation of permits in the event it is discovered that the application contains material information which is false or that the applicant

> has been charged with or has violated laws or has been convicted of the violation of any law which had such violation appeared on the original application would have prevented the granting of the permit.

The absence of ascertainable standards leaves the granting or denying of permits to the uncontrolled discretion of the Chief of Police, which is incompatible with the requirements of due process. *Fulton County v. Bartenfeld*, 257 Ga. 766 (2) (363 SE2d 555) (1988). Appellant does not contend, and we do not hold, that there can be no requirement that dancers intending to perform at licensed premises obtain permits, but there must be objective standards in the ordinance by which an applicant can intelligently seek to qualify for a permit. Id.

Finally, we agree with appellant that § 30-21-27 of the ordinance, which permits the revocation of a partial nude dancing license on the ground that any of a broad array of persons connected to the licensee has committed a crime, is overbroad. The section in question reads in pertinent part as follows:

> If the licensee or if any dancers, waiters, waitresses, bartenders, busperson, or other employee of the licensee or if any stockholder, officer or agent of the licensee, if a corporation, or if any partner, co-owner, joint-venturer, or otherwise related to the licensee shall violate any of the provisions hereof or shall be convicted of any crime involving moral turpitude, whether a felony or misdemeanor and other than traffic violations (unless such traffic violation is related to alcoholic beverages or controlled substance abuse) or shall otherwise fail to comply with the provisions hereof, the license granted pursuant to the provision of this chapter may be revoked. . . .

We see no problem in the revocation of the license for the unlawful

acts or omissions of the licensee (including persons with an ownership interest in a licensee), or for the acts or omissions of those acting for the licensee in the scope of their employment, when the acts involved are related in any way to the business for which the license was issued. The flaw in this section of this ordinance is that it puts a licensee in jeopardy of losing the license by reason of events entirely outside the control of the licensee and unconnected with the regulatory purpose of the license. Under the provision as it now exists, for instance, if a bartender employed by a licensee went to Atlanta on a day off and committed an act of forgery, a crime of moral turpitude (*Hall v. State*, 180 Ga. App. 210, 213 (348 SE2d 736) (1986)), the license of that person's employer would be subject to revocation regardless of the licensee's efforts to hire a law-abiding staff and supervise them carefully on the job. Compare *Bryant v. Mayor &c. of Americus*, 252 Ga. 76 (1) (311 SE2d 174) (1984); *Loyal Order of Moose v. Mayor &c. of Dalton*, 246 Ga. 298 (4) (271 SE2d 354) (1980). The revocation provisions, being overbroad, must be narrowed so as to bear some reasonable relation to the reasons for regulation and to put the events triggering revocation within the control of the licensee.

5. Appellants' other contentions regarding the constitutionality of the ordinance have been considered and found not to require reversal of the trial court's judgment. However, for the reasons stated above, the trial court's judgment holding the ordinance constitutional cannot stand.

*Judgment reversed. Clarke, C. J., Hunt, P. J., Sears-Collins, J., and Judge Joe C. Crumbley concur; Fletcher and Hunstein, JJ., dissent in part; Carley, J., not participating.*

FLETCHER, Justice, concurring in part and dissenting in part.

Although I agree with Justice Weltner's view that the Georgia Constitution does not vest in every state resident "a constitutional right to dance naked for tips in a barroom," the principle of stare decisis compels me to concur that nude dancing is protected expression, albeit marginally protected, under the First Amendment. See *Barnes v. Glen Theatre*, ____ U. S. ____ (111 SC 2456, 2460, 115 LE2d 504) (1991) (plurality opinion); *Harris v. Entertainment Systems*, 259 Ga. 701, 702 (386 SE2d 140) (1989); but see id. at 705 (Weltner, J., dissenting). However, because the LaGrange ordinance is not overbroad or vague, I dissent.

1. The significance of the majority opinion is that it states local governments may regulate nude dancing as a valid exercise of their police powers.

A carefully and narrowly drawn regulatory scheme which makes appropriate distinctions between public and private

behavior and which impacts only those modes of expression which, in the experience of local governments, tend to be the focal points of negative effects such as increased crime, can pass constitutional muster notwithstanding some restriction of protected expression.

Majority at 907.

Moreover, this court did not strike down many of the LaGrange ordinance's licensing and zoning provisions that the trial court upheld as constitutional. These requirements concern stage height, lighting conditions, dual employment, patron age, direct tipping, touching or fondling, and distance requirements. Specifically, in the licensing area, the ordinance requires that all performances occur on a two-foot stage at least ten feet from any patron under full lighting. LaGrange, Ga. Code § 30-21-15 (m), (p) (1992); cf. *Barnes*, 111 SC at 2475 (White, J., dissenting) (state could require nude performers to remain a minimum distance from spectators). It prohibits the licensee from employing a dancer in any other capacity; prohibits waiters, waitresses, bartenders, buspersons, and other employees from performing as dancers; prohibits any patron under 21 years of age; and prohibits both physical contact with a dancer at any time and the direct payment of a gratuity to a dancer. Section 30-21-15 (d), (j), (n), (o).

In addition, neither the trial court nor this court found any basis for reversing the ordinance's zoning requirements. Section 30-21-21 requires any establishment licensed under the ordinance to be located in a general commercial district on a one-acre tract of land with 100 feet of road frontage. The establishment may not be located within 600 feet of any residential property; within 1,000 feet of any church, school, government building, library, civic center, public park, or playground; within 100 feet of any similarly licensed establishment; and within 50 feet of any establishment licensed to sell alcoholic beverages. Id. (a) - (d).

These restrictions are legitimate exercises of the city's police powers and may be enacted without infringing on the protected expression of nude dancing. Cf. *Renton v. Playtime Theatres,* 475 U. S. 41 (106 SC 925, 89 LE2d 29) (1986) (holding zoning ordinance prohibiting adult motion picture theatres within 1,000 feet of any residence, church, park, or school satisfies First Amendment); see also *Intl. Eateries of America v. Broward County,* 941 F2d 1157 (11th Cir. 1991) (upholding county ordinances prohibiting adult nightclubs within 500 feet of a residential district and 1,000 feet of a church).

2. The cardinal rule of statutory construction is to ascertain the legislative intent. *City of Jesup v. Bennett*, 226 Ga. 606, 608 (176 SE2d 81) (1970). When the statute's language is susceptible to more than one construction, this court must give it a construction that will

sustain the act. *City of Hapeville v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980). A "statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction . . . and its deterrent effect on legitimate expression is both real and substantial." *Erznoznik v. City of Jacksonville*, 422 U. S. 205, 216 (95 SC 2268, 45 LE2d 125) (1975).

The majority opinion concludes that the definitions of nudity and partial nudity make the ordinance so broad that it applies to mainstream performance houses, a woman dancing at a pool party in her bikini bathing suit, and a child appearing naked before a parent at bath time. I do not interpret the ordinance to sweep so broadly when construed in light of its caption and "Public Declaration." See *State v. Miller*, 260 Ga. 669, 674 (398 SE2d 547) (1990) (relying on statute's policy statement to construe narrowly prohibition against mask-wearing and avoid overbreadth problem under the Federal and State Constitutions). The caption states that the ordinance seeks to limit the right to offer and perform partially nude dancing, to establish conditions for obtaining a license to operate an establishment offering partially nude dancing, and to regulate the dancers and other employees of the establishment. The public declaration states that the city enacted the ordinance in an attempt to limit criminal behavior and undesirable community conditions associated with nude dancing, such as depressed property values.[11]

The language of the ordinance can be given a narrowing construction to avoid any problem of overbreadth based on this legislative intent. The ordinance prohibits nude dancers and dancing involving acts of public indecency and regulates partially nude dancing at licensed entertainment establishments. The terms "nudity," "partial nudity," and "public indecency" in the ordinance track the definitions that the U. S. Supreme Court upheld as constitutional in *Barnes*.[12] See *Barnes*, 111 SC at 2462, n. 2. Thus, the ordinance ap-

---

[11] The public declaration at the beginning of the ordinance states:

The Mayor and Council of the City of LaGrange, based on common knowledge, and on experience derived from other local governmental jurisdictions in this state and elsewhere in this nation, believe that nude dancing, public nudity and indecency tends to and will encourage and beget criminal and other behavior such as disorderly conduct, prostitution, drug trafficking, and substance abuse. Additionally, this type of activity and the attendant criminal conduct and activity related thereto results in depressed property values in the community and surrounding neighborhoods, increased expenditures for and allocation of enforcement personnel reasonably necessary and desirable for the appropriate preservation of law and order and places an increased burden on the resources of the City and an increased burden on the Judicial System.

[12] The ordinance defines "partial nude dancing" as "dancing or appearing partially nude but at a minimum with the human male or female genitals, pubic area and buttocks and all of the nipples of the breasts of a female being at least shielded and covered by a fully opaque covering." "Total nude dancing" is defined as "appearing or dancing in a total state of na-

plies only to commercial establishments in which dancers appear in a partial state of nudity for the purpose of entertaining patrons.[13] The ordinance is not overbroad based on this limiting construction. Because its regulation of nude dancing is narrowly tailored to further the city's interest in preventing the secondary effects associated with adult entertainment establishments, the ordinance meets the test enunciated in *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252, 256 (297 SE2d 250) (1982), and should be upheld as constitutional.

3. The ordinance also meets the standard for upholding a statute challenged as unconstitutionally vague. The majority opinion errs in considering the definitions of nudity and partial nudity in isolation without considering the context of the ordinance. See *Bell v. State*, 252 Ga. 267, 269 (313 SE2d 678) (1984).

> Due process requires only that a statute define the offense in terms that advise people of ordinary intelligence of the conduct sought to be prohibited, and that provide sufficient guidelines to prevent arbitrary enforcement.

*Miller*, 260 Ga. at 674. When read in the context of regulating commercial entertainment establishments, persons of common intelligence would have no trouble in understanding the definition of partially nude dancing and totally nude dancing. Women would have to cover their nipples, and both men and women would have to cover their genitals, pubic area, and buttocks to work as nude dancers under the city ordinance. Although the woman dancing while "wearing a halter top and brief shorts" and the man dancing while "wearing only a pair of pants" arguably would be dancing in partial nudity, they would be subject to the regulations of the ordinance only if they were employed as dancers and working at one of the city's commercial establishments. The definitions considered in the context of the entire ordinance provide sufficient guidelines to alert persons about the prohibited conduct and to prevent arbitrary enforcement.

4. I concur with the majority opinion's conclusion in Division 4 that the permit requirements in subsections (e) and (g) of § 30-21-15 and revocation standards of § 30-21-27 violate due process. See Majority at 909-910. The ordinance's severability clause, however, permits the striking of these unconstitutional provisions without invalidating the entire statute since they are not mutually dependent on

---

kedness without the protection or benefit of the minimal coverings required for partial nude dancing."

[13] Cf. *7250 Corp. v. Bd. of County Commrs.*, 799 P2d 917 (Colo. 1990) (holding constitutional state Nude Entertainment Ordinance that applies only to establishments that do not have a liquor license and regulates persons appearing in a state of nudity for purposes of entertaining patrons).

the remaining provisions of the ordinance. See *City Council v. Mangelly*, 243 Ga. 358, 363 (254 SE2d 315) (1979). Accordingly, I would strike these unconstitutional provisions and uphold the remaining provisions of the ordinance as constitutional.

I am authorized to state that Justice Hunstein joins in this concurrence and dissent.

DECIDED MARCH 18, 1993.

*Franklin H. Thornton*, for appellants.
*Lewis, Taylor & Lee, James R. Lewis*, for appellees.