S93A0496. S. J. T., INC. et al.
v. RICHMOND COUNTY, GEORGIA et al.
(430 SE2d 726)

BENHAM, Justice.

This appeal is from the trial court's refusal to enjoin enforcement of an ordinance of Richmond County prohibiting certain types of entertainment, attire and conduct on premises licensed to sell, serve or dispense alcohol beverages for consumption on the premises. In seeking the injunction, appellants expressed a desire to offer entertainment (nude dancing) in their establishment which would be violative of the terms of the ordinance. After stating its intent to suppress the increased crime rate and other negative secondary effects which the experience of other locales had shown to accompany barroom nude dancing, the ordinance provides in pertinent part as follows:

*Section 2. Enactment.* The following types of entertainment, attire and conduct are prohibited upon any premises licensed to sell, serve, or dispense alcohol beverages for consumption on such premises within the unincorporated area of Richmond County.

(1) The employment or use of any person, in any capacity, in the sale or service of alcohol beverages while such person is unclothed or in such attire, costume or clothing, as to expose to view any portion of the female breast below the top of the areola or of any portion of the male or female pubic hair, anus, cleft of the buttocks, vulva and genitals.

(2) Live entertainment where any person appears in the manner described in paragraph (1) of this section or where such persons (or person) perform(s) acts of or acts which simulate any of the following:

(a) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual act which is prohibited by law.

(b) The caressing or fondling of the breasts, buttocks, anus or genitals.

(c) The displaying of the male or female pubic hair, anus, vulva or genitals.

(3) The holding, promotion, sponsoring or allowance of

any contest, promotion, special night, event or any other activity where patrons of the licensed establishment are encouraged or allowed to engage in any of the conduct described in paragraphs (1) and (2) above; provided, however, that nothing contained in this Section 2 shall apply to the premises of any mainstream performance house, museum or theater which derives less than twenty (20) per cent of its gross annual income from the sale of alcohol beverages.

1. This court has recently established that nude dancing is a form of expression protected by the free speech guarantees of the constitutions of the United States and the State of Georgia. *Harris v. Entertainment Systems*, 259 Ga. 701 (386 SE2d 140) (1989). See also *Barnes v. Glen Theatre*, 501 U. S. ___ (111 SC 2456, 115 LE2d 504, 511) (1991). In determining whether restriction on that expression is permissible, this court has applied the test stated in *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252 (297 SE2d 250) (1982), which requires that laws regulating such expression must (1) further an important government interest and (2) be unrelated to the suppression of speech, and (3) that the incidental restriction of speech must be no greater than is essential to further the government interest. See, e.g., *Pel Asso v. Joseph*, 262 Ga. 904 (427 SE2d 264) (1993). As was the situation in *Gravely v. Bacon*, 263 Ga. 203 (429 SE2d 663) (1993); *Pel Asso*, supra; and *Harris v. Entertainment Systems*, supra, there is no dispute in this case over whether the ordinance furthers the important government interest in reducing criminal activity and preventing reductions in property values associated with adult entertainment establishments or over whether the government interest is unrelated to the suppression of speech; the controversy in the present case concerns only the third requirement in the *Paramount* test. The question here, therefore, is whether the ordinance is narrowly drawn to further the county's interest in preventing the illegal activity and other negative effects associated with adult entertainment establishments offering nude dancing and alcohol.

2. Appellants first argue that because the portions of the ordinance which describe prohibited attire and conduct are patterned after OCGA § 3-3-41, and this court found that statute overbroad in *Harris*, supra, this ordinance must also fall. However, this court did not address in *Harris* the descriptions of appearance and conduct to be regulated. Instead, that statute was found to be overbroad because it applied to premises and modes of communication which were not likely to produce the undesirable effects the statute was intended to prevent.

To the extent appellants' argument on appeal can be construed to constitute an "overbreadth" attack directed specifically to the de-

scriptions of prohibited attire and conduct in the ordinance at issue, we find no merit in the argument. The restrictions on attire are sufficiently narrow to exclude ordinary clothing, describing only modes of dress intended to expose or display those parts of the human body associated with sexuality. The conduct forbidden by the ordinance is specifically sexual and does not implicate ordinary public behavior. In addition to the narrowly drawn descriptions, the ordinance is crafted to limit its scope to live persons on the premises of establishments licensed to dispense alcohol beverages, thereby avoiding any impact on private behavior. Compare *Pel Asso,* supra. We hold, therefore, that the descriptions of prohibited attire and conduct in the ordinance are sufficiently narrow in their scope to pass constitutional muster.

3. It is clear from a comparison of the ordinance with the holding of this court in *Harris,* supra, that Richmond County sought to avoid the particular overbreadth problems that were fatal to OCGA § 3-3-41. To avoid the impact on modes of expression which are not implicated in the production of negative secondary effects, the ordinance applies only to live entertainment and to employees and patrons present on the premises, and excepts from the application of the ordinance "any mainstream performance house, museum or theater which derives less than twenty (20) per cent of its gross annual income from the sale of alcohol beverages."

Appellants contend the exception for mainstream performance houses, museums and theaters, based on derivation of less than 20 percent of gross annual income from the sale of alcohol, is void for vagueness. In support of that argument, appellants pose a series of questions which they assert the ordinance does not adequately answer, thereby exposing them to danger of prosecution:

> What is income and what sources may be considered? Can alcohol be sold at a loss, but high cover charges levied? . . . Does the gross income from the alcohol income apply only during those times when a dancer is nude and alcohol is served? . . . If the owner sells set-ups for alcohol, which are sold simultaneously, is the income from the set-up to be considered part of the alcohol gross income? Since no drink is 100% alcohol, is the sale and dollar volume to be pro-rated by the percentage of the alcohol in any beverage? When does the year begin? . . . How is gross annual income measured? When does the measurement start? Can Plaintiffs give away beer, and include income from other sources at the same location?

In order to avoid being void for vagueness, " ' "all the Due Pro-

cess Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." [Cit.]' " *Sliney v. State*, 260 Ga. 167 (391 SE2d 114) (1990). While the ordinance at issue here does not answer every question which might arise about the legal operation of appellants' business, it does not function in a legal vacuum which would make such all-inclusiveness necessary. Appellants' questions are capable of being answered by the application of common sense, accepted principles of accounting, and the plethora of laws and regulations controlling the sale of alcohol. We hold, therefore, that the ordinance is sufficiently specific in its terms to permit appellants to conduct themselves so as to avoid that which is forbidden.[1]

4. In another due process attack on the ordinance, appellants argue that basing the mainstream performance house exception on derivation of less than 20 percent of income from alcohol sales is invalid because there is no rational connection between that requirement and the secondary effect sought to be avoided. We disagree.

"[L]egislation is constitutional with respect to due process if it bears a rational relation to a proper and constitutionally permitted legislative purpose." *Department of Nat. Resources v. Union Timber Corp.*, 258 Ga. 873, 876 (4) (375 SE2d 856) (1989). The exception in the ordinance is obviously intended to limit the application of the ordinance to those establishments which experience has taught are most likely to produce undesirable secondary effects, i.e., bars and nightclubs, both being types of establishments for which alcohol sales make up the largest portion of income. Although there is nothing magical about the 20 percent cut-off employed by Richmond County, it does serve the purpose of excluding establishments which do not derive most of their income from alcohol and which are not, therefore, likely to produce the problems which the ordinance was intended to prevent. Thus, there is a rational relation between the purpose of the ordinance and the use of an income level to distinguish between establishments controlled by the ordinance and those not within its scope. While using a cut-off of 21 percent or of 19 percent may have been just as effective, some particular figure must be chosen if alcohol-derived income is to be used as a measure; otherwise the ordinance would be too vague to enforce. We hold, therefore, that the use of a 20 percent cut-off does not lack a rational relation to the proper legislative purpose of limiting the undesirable effects of combining

---

[1] This holding applies equally to appellants' argument that they should be permitted to offer nude dancing for one year without enforcement of the ordinance in order to establish their "gross annual income." Applying to their current income stream the principles and laws referred to above will adequately inform appellant whether they come within the exception in the ordinance.

public nudity with alcohol consumption.

5. Mounting an equal protection attack on the ordinance, appellants contend that the ordinance constructs a class-based regulatory scheme by creating artificial distinctions between "high-brow" nudity in mainstream performance houses and "low-brow" nudity in nightclubs and bars. The distinction to be drawn, however, does not involve the socio-economic status of the patrons of the differing establishments, but the impact the establishments have on the community. The effect of the ordinance is to classify adult entertainment establishments, which experience[2] has shown to produce undesired secondary effects, differently than mainstream entertainment establishments, which have not been shown to produce negative effects on the community.

> Even applying a heightened level of scrutiny because the fundamental right of free expression is involved, a city may classify and regulate adult entertainment establishments differently from other places of entertainment. [Cit.]

*Gravely*, supra, Div. 3.

6. Finally, appellants contend that the ordinance denies them due process of law and unconstitutionally impairs their contracts by forcing them to derive income from some other source than sale of alcohol beverages and by depriving them of full use of the licenses issued them by the county. These arguments fail simply because the ordinance does not have the effects attributed to it by appellants. Appellants are free to continue conducting business as they have been doing in accordance with the licenses they have been issued, none of which specifically permits public nudity or any other conduct prohibited by the ordinance. Nothing in the record, including the licenses issued to appellants by Richmond County, establishes any vested right, contractual or otherwise, to both operate a bar and offer nude dancing.

7. In conclusion, we hold that the ordinance in question, like the

---

[2] As we noted in *Gravely*, supra, fn. 4, the U. S. Supreme Court has held that communities enacting ordinances to regulate adult entertainment are entitled to rely on the experience of other communities with regard to the secondary effects of adult entertainment establishments. *City of Renton v. Playtime Theatres*, 475 U. S. 41, 51 (106 SC 925, 89 LE2d 29) (1986). In Section 1 of the ordinance at issue here, Richmond County specifically enunciated its reliance on the experience of other communities and its concern with the undesirable effects (e.g., increased crime and lowered property values) produced by the combination of alcohol consumption and public nudity "in so-called 'nude bars' or establishments offering so-called 'nude entertainment' or 'adult entertainment' . . . ." On the other hand, as was the case in *Harris*, supra, no one has suggested that the combination of alcohol and depictions of nudity in mainstream performance houses, museums and theaters produce such negative secondary effects.

one considered in *Gravely*, supra, is a

> carefully and narrowly drawn regulatory scheme which makes appropriate distinctions between public and private behavior and which impacts only those modes of expression which, in the experience of local governments, tend to be the focal points of negative effects such as increased crime, [and therefore passes] constitutional muster notwithstanding some restriction of protected expression.

*Pel Asso.*, supra, Div. 2. Accordingly, we affirm the trial court's finding of constitutionality and its refusal to enjoin enforcement of the ordinance.

*Judgment affirmed. All the Justices concur, except, Hunt, P. J., and Sears-Collins, J., who dissent; Clarke, C. J., not participating.*

SEARS-COLLINS, Justice, dissenting.

Our country places the highest priority on the right of its citizens to speak, to write and to otherwise express themselves as they see fit, even though some may find some of the expression objectionable. Compelling evidence of a prevailing interest *must* be shown in order to surmount this high priority.

In this case, the majority appears to take the existence of the undesirable secondary effects purportedly sought to be prevented by the Richmond County ordinance as a given when, in fact, the evidence of undesirable secondary effects stemming from the combination of nude dancing and alcohol is no more than was present in *Gravely v. Bacon*, 263 Ga. 203 (429 SE2d 663) (1993), a case to which I also dissented. I must, therefore, dissent in this case because I am loathe to diminish the standard for reviewing restrictions on First Amendment guarantees based on evidence with very little, if any, weight or substance.

I am authorized to state that Presiding Justice Hunt joins in this dissent.

DECIDED JUNE 14, 1993 —
RECONSIDERATION DENIED JULY 15, 1993.

*John P. Batson,* for appellants.
*Burnside, Wall, Daniel & Ellison, Robert C. Daniel, Jr., Harry D. Revell,* for appellees.