## S95A0432. CLUB SOUTHERN BURLESQUE, INC. v. CITY OF CARROLLTON.
### (457 SE2d 816)

CARLEY, Justice.

After the constitutionality of its adult entertainment ordinances was successfully challenged by appellant's predecessor in *Yarbrough v. City of Carrollton*, 262 Ga. 444 (421 SE2d 72) (1992), appellee City of Carrollton passed a new ordinance relating to that topic. Contending that this new ordinance likewise was unconstitutional, appellant brought suit for declaratory and injunctive relief. After conducting a bench trial, the trial court entered an order which upheld the constitutionality of the new ordinance and denied an injunction against its enforcement. It is from this order that appellant appeals.

1. A legislative restriction on adult entertainment must satisfy a tripartite test in order to comport with the free speech guarantees of the federal and state constitutions. *Harris v. Entertainment Systems*, 259 Ga. 701, 703 (1) (c) (386 SE2d 140) (1989). The constitutionality of a law regulating adult entertainment will be upheld only: (1) if it furthers an important governmental interest; (2) if that governmental interest is unrelated to the suppression of speech; and, (3) if the incidental restriction of speech is no greater than is essential to the furtherance of that governmental interest. *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252, 256 (297 SE2d 250) (1982).

To a great extent, the provisions of the instant ordinance are identical to those held to satisfy the *Paramount* test in *S. J. T., Inc. v. Richmond County*, 263 Ga. 267 (430 SE2d 726) (1993) and *Gravely v. Bacon*, 263 Ga. 203 (429 SE2d 663) (1993). Only a content-neutral ordinance or statute is subject to the *Paramount* test. *Harris v. Entertainment Systems*, supra at 703 (1) (c). See *Gravely v. Bacon*, supra at 210 (Sears, J., dissenting). By applying the *Paramount* test in *S. J. T., Inc.*, supra at 268 (1), and in *Gravely*, supra at 205 (1), this court previously has rejected appellant's contention that an ordinance regulating adult entertainment establishments, such as the instant ordinance, is not content-neutral.

2. Citing *Discotheque, Inc. v. City Council of Augusta*, 264 Ga. 623 (449 SE2d 608) (1994), appellant further contends that there is insufficient evidence of the pernicious "secondary effects" of adult entertainment establishments.

Appellant served interrogatories and agreed that, at the bench trial, the City's responses thereto could be considered by the trial court "as being the sworn testimony of a representative of the City if such representative had been called to testify at trial. . . ." In those interrogatories, appellant requested that the City identify the specific governmental interest which it contended was furthered by each of certain challenged portions of the ordinance and that the City state the rational basis upon which erotic dance establishments were singled out for certain regulations. In response, the City identified the specific governmental interest contended to be furthered by each enumerated portion of the ordinance and stated that erotic dance establishments have been shown to have had a detrimental effect on property values and cause increases in criminal activity due to traffic congestion, unusual hours of operation, litter and noise problems. Appellant further requested that the City identify any studies which supported its conclusions as to each of the foregoing portions of the ordinance. In response to this request, the City listed several studies from other municipalities and counties, which had been made known to the City's mayor or its council. This evidence offered by the City was not rebutted by appellant at the bench trial. In fact, appellant

put forth no evidence whatsoever. The City's unrebutted evidence must be construed "most favorably to the upholding of the trial court's findings and judgment. [Cit.]" *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Compare *Discotheque*, supra at 624-625 (wherein the evidence was construed most strongly against the city, as the movant for summary judgment).

In enacting an adult entertainment ordinance, a city may rely on evidence of pernicious secondary effects of adult entertainment establishments as found by studies commissioned by other municipalities and counties.

> "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever *evidence* the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Renton v. Playtime Theatres*, [475 U. S. 41,] 51-52 [(106 SC 925, 89 LE2d 29) (1986)].

(Emphasis in original.) *Discotheque*, supra at 624. In *Discotheque*, there was absolutely no probative evidence of what, if anything, had been relied upon in enacting the adult entertainment ordinance. There, the city relied entirely upon the conclusory reference made in the ordinance's preamble to the "experience" of other municipalities and counties. The preamble's unexplicated reference to the "experience" of other municipalities and counties, without more, was merely hearsay. Here, in direct contrast, the City did produce evidence of the specific studies that it had relied upon and evidence of its reasonable belief in the relevance thereof. The City's evidence in this regard is not hearsay, because it does not rest on the veracity and competency of the studies themselves or their authors. Rather, the evidence derives its value solely from the credit of the City's representation that it had relied upon the named studies and the relevance thereof. OCGA § 24-3-1. The list of studies and the representation that those studies support the City's position were not offered to prove the truth of the matters asserted therein, but were offered to prove that the City had considered specific evidence of the pernicious secondary effects of adult entertainment establishments which it reasonably believed to be relevant to the problems addressed by the ordinance.

Appellant was not legally compelled to accept the City's responses to the interrogatories as the equivalent of the sworn testimony of a representative of the City. Appellant could have insisted that the City produce a witness at the bench trial, where that witness could have been subjected to a thorough and sifting cross-examination. However, appellant did agree to accept the City's responses as

the equivalent of sworn testimony, thereby waiving its right to conduct cross-examination. Construed most favorably in support of the trial court's findings and judgment, the City's unrebutted evidence was sufficient to authorize the trial court to find that the City relied on specific studies which it reasonably believed to be relevant to the problems addressed by the ordinance. Compare *Discotheque*, supra at 625.

3. Appellant asserts that the ordinance is an unconstitutional prior restraint. However, it is clear that licensing of adult entertainment establishments is not a per se violation of the First Amendment. "A city may enact an ordinance, for legitimate purposes, requiring those who would exercise their freedom of speech to obtain a license in advance. [Cit.]" *Airport Book Store v. Jackson*, 242 Ga. 214, 220 (248 SE2d 623) (1978).

4. The ordinance requires that performers, but not waitresses and other employees, remain four feet from patrons and prohibits them from receiving tips directly from patrons. Appellant urges that this denies equal protection to the performers. There is some doubt whether appellant has standing to assert an equal protection argument on behalf of the performers. However, even assuming that appellant does have such standing, the nude performers and the clothed waitresses are not similarly situated, either in job description or in attire and vulnerability to improper behavior by customers. A city may classify and regulate nude dancers differently from other employees, just as "a city may classify and regulate adult entertainment establishments differently from other places of entertainment." *Gravely v. Bacon*, supra at 207 (3).

5. Citing *Pel Asso, Inc. v. Joseph*, 262 Ga. 904 (427 SE2d 264) (1993) and *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U. S. 750 (108 SC 2138, 100 LE2d 771) (1988), appellant further contends that the ordinance contains no readily ascertainable standards for issuance of a license and allows officials unfettered discretion in demanding information from applicants.

The ordinance sets forth 13 specific standards for the issuance of a license. Appellant complains of only the thirteenth standard, which provides for consideration of the health, safety and welfare of the citizens and preservation of the neighborhoods. However, the *absence* of similar language was one of the reasons an adult entertainment ordinance was found to afford unconstitutional discretion to the mayor in *City of Lakewood*, supra at 770.

We do not find an absence of ascertainable standards leaving the grant or denial of licenses to the City's uncontrolled discretion. Compare *Pel Asso, Inc.*, supra at 909 (4) (ordinance contained no standards whatsoever). The ordinance sets forth ascertainable standards which control the City's exercise of its discretion and provide a stan-

dard for determining whether that discretion has been abused.

6. The ordinance also requires owners and employees to be of "good moral character," defined as, although not limited to, having no convictions of a felony or crime of moral turpitude within the previous five years. Appellant urges that the City cannot deny a license to operate or work in an adult entertainment establishment based on past criminal conduct.

There is nothing to prevent the denial or revocation of a license based upon the unlawful acts or omissions of the applicant or licensee himself. *Pel Asso, Inc.*, supra at 909-910 (4). Under the ordinance, the unlawful acts or omissions which result in denial or revocation of a license are felonies and crimes of moral turpitude committed within the past five years by the applicant or licensee himself. This provision is not overbroad or unconstitutional. Compare *Pel Asso, Inc.*, supra at 910 (4).

*Judgment affirmed. All the Justices concur, except Hunt, C. J., and Sears, J., who dissent.*

FLETCHER, Justice, concurring.

I concur in the judgment because the city met its burden of proof.[1] It presented sufficient evidence showing that it had important government interests in passing its adult entertainment ordinance that were unrelated to the suppression of speech. I write separately only to disagree with the dissent's assertion that this opinion would permit a city council to regulate a "mainstream art museum." This court has previously rejected that argument.[2] Nothing in the majority opinion resurrects it.

SEARS, Justice, dissenting.

I dissent to the majority's affirmance of the trial court's ruling that Carrollton's adult entertainment ordinance passes constitutional muster. I conclude that it does not because Carrollton failed to show that the ordinance "furthers an important governmental interest which is unrelated to free speech." *Quetgles v. City of Columbus*, 264 Ga. 708, 712 (450 SE2d 677) (1994). To establish this governmental interest, Carrollton, as was its right, chose to rely on the experience of other counties and municipalities regarding the pernicious secondary effects of adult entertainment establishments. *Discotheque, Inc. v. City Council of Augusta*, 264 Ga. 623, 624 (449 SE2d 608) (1994). However, once the statute was challenged, Carrollton was required to offer "probative evidence of the 'experience' of other municipalities

---

[1] See *Quetgles v. City of Columbus*, 264 Ga. 708, 709 (450 SE2d 677) (1994) (Fletcher, J., concurring).

[2] See *Gravely v. Bacon*, 263 Ga. 203, 206-207 (429 SE2d 663) (1993).

and counties upon which [it] relied." *Discotheque*, 264 Ga. at 624. Without such probative evidence, a trial court cannot fulfill its responsibility of ensuring that the adult entertainment ordinance does further one or more important governmental interests that are unrelated to the suppression of speech.

In this case, in response to interrogatories that requested information of the studies and reports made known to the Mayor and City Council regarding the secondary effects of adult entertainment establishments, Carrollton merely listed certain reports from other cities. These answers thus suffer from the same fundamental defect as did the preamble to the Augusta ordinance in *Discotheque*, 264 Ga. 623 (see *Quetgles*, 264 Ga. at 709, n. 1, which sets forth the entire preamble to Augusta's ordinance (Fletcher, J., concurring)).

In *Discotheque*, the preamble stated that Augusta was passing its ordinance based on the experience of other cities and counties and then listed those cities and counties. We held that this statement in the preamble amounted to "self-serving conclusory hearsay" regarding the experience of other municipalities and was not probative evidence of that experience. Likewise, here, the answers to the interrogatories, which merely list allegedly applicable studies, are merely "self-serving conclusory hearsay," *Discotheque*, 264 Ga. at 624, and are not probative evidence of the experience of other municipalities. Contrary to the assertion in the majority opinion, the list of the studies and the city's representations regarding them were offered to prove the truth of the matters asserted therein — that the studies demonstrated the undesirable secondary effects of adult entertainment establishments and justified the regulations contained in the city's ordinance. Lacking probative evidence to that effect, the trial court in this case could not reasonably determine whether the legislative restrictions *further* an important governmental interest unrelated to the suppression of speech. Stated differently, if the studies and the city's representations regarding them are not offered for the truth of the matter asserted therein, then there is no method by which the trial court or this Court can determine whether the alleged studies were a mere subterfuge to justify an ordinance enacted to suppress speech. Under the majority's rationale, so long as the city council stated that its interpretation of a study demonstrated the evils of adult entertainment, it would be irrelevant whether the study in question really did so.[3] The majority has, in fact, failed to follow our previous opinion in *Discotheque*, 264

[3] The majority's rationale, taken to its logical conclusion, would permit a city council to regulate activities at mainstream art museums simply by stating that it had relied on a study concluding that nude photographs, paintings, and statues created undesirable secondary effects. Whether that were actually true would be irrelevant under the standard adopted by the majority.

Ga. at 624. There, we required the city to produce some probative "evidence that criminal activity and deterioration of neighborhoods were . . . pernicious secondary effects of adult entertainment establishments." The type of statement permitted under the majority opinion today — the mere statement by a city council member that a study showed those effects — is not evidence that establishes those secondary effects, as the statement is hearsay in this regard.

Moreover, Carrollton failed to demonstrate, in its answers to the interrogatories or otherwise, that it relied upon these studies and reports "in passing the municipal ordinance." *Discotheque*, 264 Ga. at 624. See also *Quetgles*, 264 Ga. at 712 (Sears, J., dissenting).

Finally, although Club Southern Burlesque did agree for the city's answers to the interrogatories to be treated as evidence, it did not waive its right to have those answers evaluated under the appropriate legal standards. For the foregoing reasons, applying those standards leads ineluctably to the conclusion that Carrollton failed to carry its burden to show that it had an important governmental interest unrelated to the suppression of speech in enacting the ordinance. I therefore dissent to the majority opinion.

I am authorized to state that Chief Justice Hunt joins in this dissent.

DECIDED JUNE 5, 1995 —
RECONSIDERATION DENIED JUNE 30, 1995.

*Thomas E. Maddox, Jr.,* for appellant.
*Wiggins & Camp, William J. Wiggins,* for appellee.