S95A0268. WORLD FAMOUS DUDLEY'S FOOD & SPIRITS, INC. et al. v. CITY OF COLLEGE PARK.
(458 SE2d 823)

</div>

THOMPSON, Justice.

The City of College Park enacted an ordinance which prohibits full or substantial nudity in establishments where alcoholic beverages are served. Plaintiffs challenged the constitutionality of the ordinance, asserting that the city relied upon flawed studies to show a correlation between adult entertainment establishments and crime, and that, in any event, the city was motivated by a desire to suppress nude dancing, not crime. The superior court awarded summary judgment to the city, upholding the constitutionality of the ordinance. We affirm because the city demonstrated that the studies it relied upon in enacting the ordinance were relevant to the problem that the ordinance addresses, and that crime prevention was the motivating factor.

To pass constitutional muster, an ordinance regulating adult entertainment must satisfy the three-part test set forth in *Paramount*

---

*Pictures Corp. v. Busbee*, 250 Ga. 252 (297 SE2d 250) (1982). The ordinance must (1) further an important government interest, (2) be unrelated to the suppression of speech, and (3) restrict speech no more than necessary to further the government interest. Id. at 256. See also *S. J. T., Inc. v. Richmond County*, 263 Ga. 267, 268 (430 SE2d 726) (1993). Plaintiffs assert that the trial court erroneously granted the city's motion for summary judgment because it failed to meet its burden as to the first and second requirements of the *Paramount* test.

The burden was on the city, as the movant for summary judgment, to show that no genuine issue of material fact remained as to its satisfaction of the requirements of the *Paramount* test. *Discotheque, Inc. v. City Council of Augusta*, 264 Ga. 623, 624 (449 SE2d 608) (1994). In support of its motion, the city submitted the ordinance; the minutes of the city council meeting at which the need for such an ordinance was discussed; an Austin, Texas study showing a correlation between adult entertainment establishments and crime; and statistics from an Atlanta study of criminal activity in four areas in which adult business establishments are located.

The preamble of the ordinance outlines the pernicious secondary effects of adult entertainment establishments, including increased criminal activity and community blight. It states that these effects can be gleaned from the "experiences" of other municipalities, including Austin, Texas, Indianapolis, Indiana, and other cities. It also states that the experiences of these cities are relevant to the Atlanta metropolitan area, and that College Park is particularly vulnerable to the problem of community blight "given the massive buyout of airport impacted residential areas and the City's longstanding commitment to redevelopment of those areas as high-quality commercial and industrial uses." The preamble concludes that the ordinance is designed to ameliorate the pernicious secondary effects of adult entertainment establishments.

The minutes of the meeting demonstrate that the Austin study was made available to members of the city council before the meeting convened. The minutes also reflect that College Park's Chief of Police addressed the council concerning the connection between adult business establishments and crime. The police chief summarized the results of the Austin study, informing the council that sex-related crimes increase in neighborhoods surrounding adult entertainment establishments. The chief told the council that his department conducted its own study and found that "criminal acts such as robbery, rape and assault" increased in adult business establishment areas. In addition, the chief explained the crime statistics from the Atlanta study.

1. Plaintiffs argue that the city failed to meet the first prong of

the *Paramount* test because it relied upon flawed studies to show the pernicious secondary effects of adult entertainment establishments. In this regard, plaintiffs point to the affidavit of an expert who opined that the studies relied upon by the city were too flawed to establish a correlation between adult entertainment establishments and crime. Plaintiffs' argument misses the mark. It was not incumbent upon the city to prove the efficacy of the studies. To the contrary, the city was only required to prove that it considered "specific evidence of the pernicious secondary effects of adult entertainment establishments which it reasonably believed to be relevant to the problems addressed by the ordinance." *Club Southern Burlesque v. City of Carrollton*, 265 Ga. 528, 530 (457 SE2d 816) (1995). The city met that burden by producing evidence of the specific studies it relied upon and its reasonable belief in the relevance of those studies. Compare *Club Southern Burlesque v. City of Carrollton*, supra, with *Discotheque, Inc. v. City Council of Augusta*, supra.

2. Plaintiffs contend that the city failed to satisfy the second prong of the *Paramount* test because the minutes of the city council meeting show that the motivating factor in the enactment of the ordinance was suppression of speech, not crime prevention. In this connection, plaintiffs assert that no evidence concerning the correlation between crime and adult entertainment establishments was considered by the council until it first decided to regulate such establishments. This assertion is without merit. The minutes of the city council meeting demonstrate that copies of the Austin study were distributed to the members of the council before the meeting began. The minutes also show that the city's police chief came prepared to speak to the council about the crime factor, and that he did so at length, outlining the results of the Austin study, his own department's study, and Atlanta crime statistics. Thus, it is clear that the crime issue was on the minds of the council members from the outset, and that it was the motivating factor in enacting the ordinance. Nothing in the record supports a contrary conclusion. Compare *Krueger v. City of Pensacola*, 759 F2d 851 (11th Cir. 1985) (record demonstrated that ordinance's mere references to crime were nothing more than attempt to shield it from constitutional attack).

3. The city can enforce the ordinance even though a clerk may have failed to give plaintiffs a copy of the ordinance when they sought information concerning adult business establishments. See *Corey Outdoor Advertising v. Bd. of Zoning Adjustment*, 254 Ga. 221, 223 (3) (327 SE2d 178) (1985).

*Judgment affirmed. Benham, C. J., Fletcher, P. J., Sears, Hunstein and Carley, JJ., concur.*

FLETCHER, Presiding Justice, concurring.

The city's motive in enacting the ordinance is irrelevant. As the United States Supreme Court stated when it first applied time, place, and manner restrictions to symbolic speech, motive does not matter: "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."[1] The critical issue is whether the ordinance's incidental restrictions on the symbolic speech of nude dancing are no greater than necessary to further the government's legitimate interests in preventing crime and decreased property values. I agree with the majority that the ordinance is narrowly drawn and therefore constitutional.

SEARS, Justice, concurring.

Unlike the records in *Discotheque, Inc. v. City Council of Augusta*, 264 Ga. 623 (449 SE2d 608) (1994), and *Club Southern Burlesque v. City of Carrollton*, 265 Ga. 528 (457 SE2d 816) (1995), the record in this case demonstrates that the City of College Park had adequate factual grounds on which to base a reasonable belief that its ordinance furthered an important governmental interest and that the city considered those factual grounds before enacting the ordinance.[2] Moreover, the record also demonstrates that the city did not have an impermissible motive — the suppression of protected expression — in enacting the ordinance.[3] For these reasons, I concur in the majority opinion.

DECIDED JULY 13, 1995 —
RECONSIDERATION DENIED JULY 28, 1995.

*Alan I. Begner,* for appellants.
*Glaze, Glaze & Fincher, George E. Glaze, Steven M. Fincher, Laurel E. Henderson,* for appellee.

---

[1] *United States v. O'Brien*, 391 U. S. 367, 383 (88 SC 1673, 20 LE2d 672) (1968); see also *State v. Miller*, 260 Ga. 669, 672, n. 3 (398 SE2d 547) (1990) (rejecting argument that anti-mask statute violated free speech because the legislature enacted it to unmask the Klan).

[2] See *Krueger v. City of Pensacola*, 759 F2d 851, 855 (11th Cir. 1985) (where governmental regulation of fundamental interest such as free speech is concerned, the government must show that "the articulated concern had more than merely speculative factual grounds").

[3] Id. at 855-856, n. 6.