S11A1375. GREAT AMERICAN DREAM, INC. v. DeKALB COUNTY et al.

(727 SE2d 667)

HINES, Justice.

Great American Dream, Inc. d/b/a Pin Ups Night Club ("Pin Ups") brought this appeal from an order of the trial court denying its petition for an interlocutory injunction. For the reasons that follow, we reverse and remand with direction.

Pin Ups is a commercial establishment in DeKalb County that provides to its customers adult entertainment in the form of nude dancers. It holds a restaurant license as well as a license permitting it to sell alcoholic beverages by the drink. Its alcohol services end each day at a time in accord with county ordinances.[1] Included in its business practices has been the providing of breakfast food from the time alcohol service ends until 7:00 a.m. daily, when Pin Ups closes; it then reopens at 9:00 a.m.[2]

On June 22, 2010, the DeKalb County Board of Commissioners ("Board") amended its ordinances to provide that one hour after the end of the legal period for selling alcoholic beverages, the business must be cleared of customers, close, and not reopen until 9:00 a.m. ("the ordinances").[3] Pin Ups, naming the Board, its members, and DeKalb County as defendants, filed a petition seeking temporary and

---

[1] Evidence was submitted showing that service of alcoholic beverages stopped at 3:45 a.m. Tuesdays through Saturdays, and at 2:45 a.m. on Sundays and Mondays.

[2] On Sundays, Pin Ups reopens at 12:30 p.m.

[3] The relevant ordinances read:

**Sec. 4-126. Hours of sale and operation.**

Distilled spirits shall be sold and delivered to the customer for consumption on the

permanent injunctive relief from the operation of the ordinances, as well as damages,[4] attorney fees, and a declaratory judgment. The trial court denied a temporary restraining order. A hearing was held on Pin Ups's request for an interlocutory injunction and, after "balancing the equities between the parties," the trial court denied Pin Ups injunctive relief pending trial. See *Cherokee County v. City of Holly Springs*, 284 Ga. 298, 300-301 (2) (667 SE2d 78) (2008); *Hampton Island Founders v. Liberty Capital*, 283 Ga. 289, 293 (1) (b) (658 SE2d 619) (2008).

1. In denying the interlocutory injunction, the trial court characterized Pin Ups's petition as primarily raising due process concerns, concluded that the ordinances met the "rational basis" test, see *Georgia Dept. of Human Resources v. Sweat*, 276 Ga. 627, 628 (2)

---

premises during the following hours:

(1) Monday through Friday are from 9:00 a.m. until 3:55 a.m. the following day.

(2) Saturday hours are from 9:00 a.m. until 2:55 a.m. on Sunday.

(3) Sunday hours are from 12:30 p.m. until 2:55 a.m. on Monday as permitted by section 4-128.

Sales and deliveries during all other hours are prohibited. There shall be no consumption on the premises after prohibited hours have been in effect for one-half (1/2) hour. All licensed establishments must close their premises to the public and clear their premises of patrons within one (1) hour after the time set by this chapter for discontinuance of the sale of alcoholic beverages on the premises and shall not reopen their premises to the public until 9:00 a.m. or thereafter.

**Sec. 4-147. Hours of sale and operation.**

Beer and/or wine shall be sold and delivered to the customer for consumption on the premises only during the following hours:

(1) Monday through Friday are from 9:00 a.m. until 3:55 a.m. the following day.

(2) Saturday hours are from 9:00 a.m. until 2:55 a.m. on Sunday.

(3) Sunday hours are from 12:30 p.m. until 2:55 a.m. on Monday as permitted by section 4-149.

Sales and deliveries during all other hours are prohibited. There shall be no consumption on the premises after prohibited hours have been in effect for one-half (1/2) hour. All licensed establishments must close their premises to the public and clear their premises of patrons within one (1) hour after the time set by this chapter for discontinuance of the sale of alcoholic beverages on the premises and shall not reopen their premises to the public until 9:00 a.m. or thereafter.

**Sec. 4-162. Hours of sale and operation.**

Alcoholic beverages shall be sold and delivered to the customer for consumption on the premises only during the following hours:

(1) Monday through Friday are from 9:00 a.m. until 3:55 a.m. the following day.

(2) Saturday hours are from 9:00 a.m. until 2:55 a.m. on Sunday.

(3) Sunday hours are from 12:30 p.m. until 2:55 a.m. on Monday as permitted by section 4-164.

Sales and deliveries during all other hours are prohibited. There shall be no consumption on the premises after prohibited hours have been in effect for one-half (1/2) hour. All licensed establishments must close their premises to the public and clear their premises of patrons within one (1) hour after the time set by this chapter for discontinuance of the sale of alcoholic beverages on the premises and shall not reopen their premises to the public until 9:00 a.m. or thereafter.

[4] Pin Ups's Chief Executive Officer averred that compliance with the ordinances would result in a loss of $2,000 a week in breakfast sales.

(580 SE2d 206) (2003), and that Pin Ups thus had little likelihood of succeeding on the merits of its complaint, see *Garden Hills Civic Assn. v. MARTA*, 273 Ga. 280, 281 (1) (539 SE2d 811) (2000); the court relied upon this conclusion in denying the injunction. Pin Ups asserts that in doing so, the trial court applied an incorrect standard to analyze the impact of the ordinances upon its free speech rights. To evaluate that claim, it must be determined whether Pin Ups asserted violations of a right under the First Amendment to the United States Constitution, or under Article I, Section I, Paragraph V of the Georgia Constitution.[5] The distinction is important; this Court recently reiterated that our precedents have established that Georgia's constitutional protection of free speech is broader than that provided by the First Amendment. See *Grady v. Unified Govt. of Athens-Clarke County*, 289 Ga. 726, 728-731 (2) (b) (715 SE2d 148) (2011). And, it is the protection of the Georgia Constitution that Pin Ups specified in its petition, asserting that the ordinances "violate the Georgia Constitution" in various ways, including infringing upon the right of free speech; there was no mention of the First Amendment.[6]

As Pin Ups alleged a violation of free speech rights under the Georgia Constitution, the trial court erred in applying the rational basis test. The entertainment activity at issue has been recognized as expressive conduct protected under our Constitution's free speech clause. See *Harris v. Entertainment Systems*, 259 Ga. 701, 702 (1) (a) (386 SE2d 140) (1989). The effect of the ordinances is that the time during which Pin Ups's protected activity is conducted is now more limited than it was before the ordinances were enacted, even though the ordinances do not specifically mention the protected conduct and they apply to all businesses holding licenses to serve alcohol in the county. The appellees assert that the ordinances are justified on grounds of combating the undesirable secondary effects of businesses that sell alcoholic beverages by promoting enforcement of required closing times, and thus, the ordinances are considered content neutral. See *Goldrush II v. City of Marietta*, 267 Ga. 683, 690 (4) (482 SE2d 347) (1997). Accordingly, the ordinances are "content-neutral

[5] Article I, Section I, Paragraph V of the Georgia Constitution of 1983 reads:
No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty.

[6] The only arguable reference to the First Amendment in Pin Ups's petition is in a section alleging violations of the Georgia Constitution "in the following particulars," and then stating that the ordinances "violate *[City of] Renton v. Playtime Theaters, Inc.*, 475 U. S. 41 [(106 SC 925, 89 LE2d 29)] (1986), because the ordinances fail to provide for reasonable alternative avenues of communication for nude dancing without alcohol." That concept formed no part of the trial court's analysis, and is not an issue on appeal.

legislation regulating trade" that also affect protected expression, but "only incidentally." *Paramount Pictures Corp. v. Busbee,* 250 Ga. 252, 255 (1) (297 SE2d 250) (1982).

A content-neutral regulation that incidentally affects protected expression must undergo something more than the rational basis test. Such a law can be upheld only "if it furthers an important government interest; if the government interest is unrelated to the suppression of speech; and if the incidental restriction of speech is no greater than is essential to the furtherance of that interest. [Cits.]" Id. at 256. Accord *Goldrush II,* supra at 692 (5); *Harris,* supra at 703 (1) (c).[7] Inasmuch as the trial court made its ruling based upon an incorrect legal standard, we must reverse its decision and remand the case to that court for it to evaluate Pin Ups's request for injunctive relief using the correct legal standard. See *Gwinnett County v. Davis,* 268 Ga. 653, 654 (492 SE2d 523) (1997).

2. The trial court's order balancing the equities discussed not only the likelihood of success on the merits, but also found that Pin Ups had an adequate remedy at law, as any loss of income or goodwill could be compensated by money damages, and ruled that Pin Ups would not suffer any irreparable injury if the injunction was not issued. See *Garden Hills,* supra at 282. See also *Sarrio v. Gwinnett County,* 273 Ga. 404, 405 (1) (542 SE2d 485) (2001). Pin Ups cites *Elrod v. Burns,* 427 U. S. 347, 373 (VII) (96 SC 2673, 49 LE2d 547) (1976), for the principle that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." And, we agree that this is the case as well for violations of the guarantee of free speech found in Georgia's Constitution; monetary damages are inadequate for such an injury.

---

[7] As noted in *Grady,* supra, there is precedent of this Court to the effect that content-neutral laws that directly regulate the "time, place, and manner" of protected expression must, under the Georgia Constitution, be the "least restrictive means" of furthering the government's significant interests, rather than being held to the test set forth in *Paramount Pictures,* supra. See *Statesboro Publishing Co. v. City of Sylvania,* 271 Ga. 92, 95-96 (2) (516 SE2d 296) (1999) ("Because the ordinance challenged in this case regulates political, religious, and personal speech, we interpret our state constitution to require the city to narrowly draw its regulations to suppress no more speech than is necessary to achieve the city's goals."). However, that test has never been applied to regulations that merely have an incidental effect on protected speech, but rather has only been applied when the challenged law sought directly to regulate the time, place, and manner of the protected speech; at issue in *Statesboro Publishing* was a county ordinance regulating the distribution of free printed material in yards, driveways, or porches. See also *Coffey v. Fayette County,* 279 Ga. 111 (610 SE2d 41) (2005), involving a county sign ordinance regulating the number and size of signs. In *Grady,* supra, we questioned the rationale for *Statesboro Publishing* and *Coffey,* but found it unnecessary to reconsider those decisions because the "time, place, and manner" noise ordinance at issue survived review under even the stricter *Statesboro Publishing* test. Because the ordinances at issue here only incidentally affect the protected speech, we again need not resolve the question raised in *Grady.*

See *Joelner v. Village of Washington Park*, 378 F3d 613, 620 (II) (7th Cir. 2004).[8]

*Judgment reversed and case remanded with direction. All the Justices concur.*

DECIDED MARCH 23, 2012.

*Kenneth I. Sokolov*, for appellant.
*Sam L. Brannen, Jr.*, for appellees.

___

[8] The trial court also stated that an injunction would not serve to preserve the status quo because, at the time of the order, the ordinances had been in effect for eight months while, apparently, Pin Ups complied with the ordinances; the trial court concluded that the status quo was thus Pin Ups operating in accordance with the ordinances, and the requested interlocutory injunction would therefor alter the status quo. Neither the trial court nor the appellants cite authority for the proposition that a party must either violate a law it is challenging or forfeit its claim to an interlocutory injunction, and we find none. "[A]n interlocutory injunction 'is a device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication. . . . (T)here must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy.' [Cit.]" *Hampton Island Founders*, supra.