Peterson, J., concurring.
I concur fully in the Court's decision, which is a faithful application of our precedents. I write separately to express my concern with our approach to constitutional interpretation reflected in those precedents.
I agree that Maxim's free speech claims under the United States Constitution and the Georgia Constitution should be rejected. As the Court's decision explains, their federal claim fails. And Maxim has not articulated a single reason why the Georgia Constitution should be interpreted as giving them any greater rights than the United States Constitution, and so their claim under the Georgia Constitution necessarily also fails. But our cases holding that the Georgia Constitution protects nude dancing at all rest on a shaky premise.
Although we have extended state constitutional protection to nude dancing for nearly 30 years, we have done so without any actual analysis of the Georgia Constitution. We first held that the Georgia Constitution's Speech Clause protects nude dancing in Harris v. Entertainment Systems, Inc., 259 Ga. 701, 702 (1) (a), 386 S.E.2d 140 (1989). But we did so without any consideration of the text, context, or history of that provision; indeed, we explicitly declined to do any actual construction of our Constitution at all. Rather, framing the issue as whether the statute in question reached expression protected by the First Amendment or the Georgia Constitution's Speech Clause, we declared that, "[a]s this Court has never directly addressed the issues this appeal raises with regards to Georgia's protection of speech, we will apply First Amendment standards." Id. (citing Paramount Pictures Corp. v. Busbee , 250 Ga. 252, 255 n.5, 297 S.E.2d 250 (1982) (stating that "[i]n the absence of controlling state precedent[,] this court has applied analogous First Amendment standards when construing the state constitution") ). We concluded that "because at least some of the proscribed conduct would fall within the purview of First Amendment protection, it [was] also protected by 1983 Georgia Constitution Art. I, Sec. I, Par. V." Id. But simply importing federal standards without analysis is not the way a state's highest court should interpret its constitution.
And ever since, when the question of the Georgia Constitution's protection of nude dancing has arisen, we've relied on Harris or its progeny. See, e.g., Pel Asso, Inc. v. Joseph , 262 Ga. 904, 905 (1), 427 S.E.2d 264 (1993) (citing Harris ); Gravely v. Bacon , 263 Ga. 203, 205 (1), 429 S.E.2d 663 (1993) (citing Pel Asso ); Oasis Goodtime Emporium I, Inc. v. City of Doraville , 297 Ga. 513, 520 (3), 773 S.E.2d 728 (2015) (citing Harris and Gravely).
The text of the Georgia Constitution's Speech Clause is quite different from the Speech Clause of the First Amendment. See Ga. Const. Art. I, Sec. I, Para. V ("No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty."); see also Tucker v. Atwater , No. S18C0437, --- Ga. ----, 815 S.E.2d 34, 2018 WL 2470936, at *2 n.3, 2018 Ga. LEXIS 404, at *5 n.3 (June 4, 2018) (Peterson, J., concurring) (noting textual difference). Whether the text's reference to the right to "speak, write, and publish" describes the scope of the "freedom of speech" that the Georgia Constitution protects is unclear to me.
And "the freedom of speech" that the Speech Clause protects must be understood in the light of what that term meant at the time it was adopted. See Olevik v. State , 302 Ga. 228, 235 (2) (c) (i), 806 S.E.2d 505 (2017). That term appeared first in the Constitution of 1861. See Ga. Const. of 1861, Art. I, Sec. 8 ("Freedom of thought and opinion, freedom of speech, and freedom of *40 the press, are inherent elements of political liberty. But while every citizen may freely speak, write and print, on any subject, he shall be responsible for the abuse of the liberty."). Similar provisions appeared in the 1865 and 1868 Constitutions. See Ga. Const. of 1865, Art. I, Sec. 6 ("Freedom of speech, and freedom of the press, are inherent elements of political liberty. But while every citizen may freely speak or write, or print on any subject, he shall be responsible for the abuse of the liberty."); Ga. Const. of 1868, Art. I, Sec. 9 (same with minor punctuation differences). In 1877, the Speech Clause took a form almost identical to that applicable here, except that it used the phrase "the liberty of speech" instead of "freedom of speech." See Ga. Const. of 1877, Art. I, Sec. I, Para. XV ("No law shall ever be passed to curtail, or restrain, the liberty of speech, or of the press; any person may speak, write, and publish his sentiments, on all subjects, being responsible for the abuse of that liberty."). And so it remained until the 1983 Constitution returned to the "freedom of speech." See Ga. Const. of 1945, Art. I, Sec. I, Para. XV (same); Ga. Const. of 1976, Art. I, Sec. I, Para. IV (same with minor punctuation differences). What all of this means for the meaning of the Georgia Constitution's Speech Clause is a question we've never attempted to answer in this context.
In any event, in Harris, two Justices of this Court dissented from the holding that the Georgia Constitution's Speech Clause protects nude dancing:
The first Constitution of Georgia, in the year 1777, guaranteed freedom of the press. The 1877 Constitution guaranteed freedom of speech. I cannot believe that our forebears, in writing these protections, intended to vest in each Georgian a constitutional right to dance naked for tips in a barroom. Nor do I think that the citizens of Georgia who ratified the Constitution of 1983 intended to preserve or to create any such "right."
Harris , 259 Ga. at 705 (3), 386 S.E.2d 140 (Weltner, J., joined by Marshall, C. J., dissenting). We have since characterized as "interesting" an argument that Justice Weltner was correct, but found that the answer wouldn't affect the outcome, and so we didn't need to decide the question. See Oasis Goodtime Emporium , 297 Ga. at 520 n.11, 773 S.E.2d 728.
Admittedly, Justice Weltner's dissent wasn't exactly the fulsome analysis of the "language, history, and context" of the Speech Clause that is required. See Olevik , 302 Ga. at 234 (2) (b) n.3, 806 S.E.2d 505 ; see also Grady v. Unified Gov't of Athens-Clarke Cty. , 289 Ga. 726, 731 (2) (b) n.3, 715 S.E.2d 148 (2011) (explaining that proper state constitutional interpretation requires "detailed analysis of their specific constitutional language, history, and precedent and comparison" to similar federal provisions); Miller v. Deal , 295 Ga. 504, 511, 761 S.E.2d 274 (2014) (rejecting state constitutional argument where "[n]owhere in the papers filed by the plaintiffs do we find a reasoned argument-supported by an analysis of the pertinent constitutional text, structure, and history-that the guarantee of due process in the Georgia Constitution means something more in this context than the same guarantee in the United States Constitution"). But there's no reason why the Georgia Constitution has to protect everything that the United States Constitution protects. Olevik , 302 Ga. at 234 (2) (b) n.3, 806 S.E.2d 505 (noting that "a state constitution may ... offer less rights than federal law, so long as it does not affirmatively violate federal law"). And although we have interpreted the Georgia Constitution's Speech Clause as more protective of speech than the First Amendment in at least one context, see K. Gordon Murray Productions, Inc. v. Floyd , 217 Ga. 784, 790-793, 125 S.E.2d 207 (1962) (holding prior restraint of movies valid under United States Constitution but invalid under Georgia Constitution), that doesn't necessarily mean that it would be broader (or even coextensive) in every other context.
But again, as in Oasis Goodtime Emporium, we don't need to reconsider our precedent today, because even under that precedent, Maxim loses. And, indeed, in any case in which the plaintiff brings claims under both the United States and Georgia Constitutions, there may not be a real reason to reconsider that precedent. If future plaintiffs bring both claims and lose under the United States Constitution, they'll lose under the Georgia Constitution regardless of whether it protects nude dancing the same or less than the United States Constitution; reconsideration of our precedent under the Georgia Constitution would matter in such a case only if we concluded that our Constitution was more *41 protective in this context. And if plaintiffs bring both claims and win under the United States Constitution, the scope of the Georgia Constitution is immaterial-an ordinance that violates the United States Constitution is invalid regardless of whether it also violates the Georgia Constitution.
Nevertheless, if an appropriate case were to arise, we should again consider the question we answered in Harris, but this time in the light of the Georgia Constitution's language, history, and context.
I am authorized to state that Justice Nahmias and Justice Blackwell join in this concurrence.